**United States Bankruptcy Court**
**Eastern District of Pennsylvania**

By: Michael I. Assad (#330937)
Law Office of Mike Assad, P.C.
923 Haddonfield Road, Suite 336
Cherry Hill, NJ 08002
609-808-3300
mike@assad.law
*Proposed Attorney for Debtor*

In re: UTU Corp.,

*Debtor*.

| | |
|---|---|
| Case No.: | 26-14387-amc |
| Chapter: | 11 (Subchapter V) |
| Judge: | Ashely M. Chan |

# Declaration of Debtor's Authorized Representative in Support of Petition and First-Day Motions

## I. Background

1. I, Joseph K. Oh, am the President, sole director, and sole shareholder of UTU Corp. (the "Debtor"), the Debtor in this case, and its Authorized Representative.

2. Kungmi Park helps me manage the business. She does not own stock in the Debtor.

3. I oversee all aspects of the Debtor's operations, including its restaurant, kitchen, catering, and staff, and I am familiar with its operations, financial affairs, and obligations.

4. I make this declaration to provide an overview of the Debtor, the circumstances that led to this case, and the factual basis for the relief requested in the Debtor's first-day motions.

## II. The Business

5. The Debtor operates a restaurant, The Gold Standard Cafe, at 4800 Baltimore Avenue, Philadelphia, PA 19143, offering dine-in, take-out, delivery, and catering, including regular catering for the University of Pennsylvania. It has operated since 2015.

6. Based on its bank records for the twelve months ended September 30, 2026, the Debtor's sales deposits averaged approximately $46,520 per month.

7. On October 19, 2026 (the "Petition Date"), the Debtor filed this case under subchapter V of chapter 11. It intends to continue operating its restaurant as debtor in possession.

**III. Events Leading to the Bankruptcy Filing**

8. Like many restaurants, the Debtor has faced a steady increase in the cost of doing business, including the cost of food, supplies, labor, insurance, and utilities, without a corresponding increase in its sales. These rising costs have strained the Debtor's cash flow and left it unable to service its debts, including its SBA loan, as currently structured. The Debtor filed this case to reorganize its debts while continuing to operate.

**IV. Need for Use of Cash Collateral**

9. The Debtor's largest liability is a COVID-19 Economic Injury Disaster Loan from the U.S. Small Business Administration ("SBA"), made in May 2020 and increased to $400,000 in October 2021. Ms. Park and I each personally guaranteed it.

10. SBA's online borrower portal showed a payoff balance of $422,540.33 as of August 31, 2026, and reported the loan as current. Since May 2026, the Debtor has paid SBA $491.50 each week.

11. The SBA loan is secured by a lien on practically all of the Debtor's personal property. Because the lien extends to the Debtor's cash, deposit accounts, and receivables, essentially all of its available cash is subject to it. To my knowledge, no other creditor holds a lien on the Debtor's property.

12. On the Petition Date, the Debtor's two bank accounts held approximately $13,000 (about $11,500 at TD Bank and $1,500 at Citizens Bank). Based on my knowledge of the business,

I estimate that in a liquidation the Debtor's accounts receivable would bring approximately $1,000, its food and beverage inventory approximately $3,000, and its kitchen equipment, furniture, and fixtures approximately $8,400.

13. The Debtor relies on its daily receipts to buy food several times a week, pay its employees every two weeks, pay rent of approximately $3,000 to its landlords on the first of each month, and pay its utilities. Its next payroll is due on October 30, 2026.

14. While the Debtor operates, the food it buys becomes sales, its sales become card receivables that convert to cash within days, and that cash buys more food. This cycle maintains the Debtor's inventory, receivables, and cash.

15. Without prompt approval to use cash collateral, the Debtor could not meet these expenses and would have to close within 10 days, losing its employees and the value of the business.

16. I have reviewed the monthly budget attached to the Debtor's cash collateral motion as Exhibit A and believe it is reasonable and achievable.

17. The Debtor can afford to pay SBA $800 per month as adequate protection and keep its business owner's insurance and workers' compensation insurance in force.

## V. Need to Pay Employee Wages

18. The Debtor has four employees whose work is essential to its daily operations.

19. Many of the Debtor's employees live paycheck to paycheck. If payroll were missed, the Debtor would likely lose employees it could not quickly replace.

## VI. Need to Maintain Existing Bank Accounts and Cash Management

20. The Debtor has two checking accounts. Its TD Bank account ending in 7599 receives card and delivery deposits and pays suppliers, payroll, rent, taxes, and SBA. Its Citizens

Bank account ending in 8264 receives catering payments from the University of Pennsylvania. The Debtor has no other bank accounts.

21. The Debtor's card processor, delivery platforms, payroll, and automatic debits are all tied to these accounts. Changing them would require redirecting each of those arrangements and would interrupt the Debtor's cash for weeks.

**VII. Need for Continued Card Processing and Ordering Platforms**

22. The Debtor's card payments are processed by Toast, Inc., and it receives online and delivery orders through DoorDash, Uber Eats, Grubhub, and Owner.com. These are critical sources of daily revenue.

23. Toast deducts its processing fees, chargebacks, and refunds before depositing settlements, and the platforms deduct their commissions. If any of them withheld payments or stopped processing orders, the Debtor's cash flow would be immediately impaired.

**VIII. Need for Continuation of Utility Services**

24. The Debtor receives electric service from PECO and gas service from Philadelphia Gas Works. Its combined charges for these services average approximately $1,318 per month. The PECO account is held in the name of South1318 Corp., a company I own that operated a second restaurant location on South Street until it closed during the COVID-19 pandemic. That account serves the Debtor's restaurant at 4800 Baltimore Avenue. The Debtor has paid that account and will ask PECO to transfer it into the Debtor's name. Water service is billed to the Debtor's landlord.

25. Termination of either service would make continued operations impossible. The Debtor has paid its utilities regularly and can provide each provider a deposit equal to two weeks of its average charges, about $610 in total.

## IX. Declaration

26. I declare under penalty of perjury that the foregoing is true and correct.

Date: October 20, 2026

/s/ Joseph K. Oh
Joseph K. Oh
Authorized Representative