EXHIBIT
A

**Law Office of Mike Assad, P.C.**
**Retainer Agreement for Corporate Chapter 11 (Subchapter V**

Client: **UTU Corp.**

Authorized Representative: **Joseph K. Oh**

The client named above ("the corporation," whatever its legal form) is hiring us as attorneys to represent it in a chapter 11 bankruptcy case, to be administered under subchapter V of chapter 11, in the United States Bankruptcy Court for the **Eastern District of Pennsylvania**.

We appreciate the opportunity to represent the corporation and look forward to helping it reorganize its debts and stay in business. This agreement outlines what the corporation must pay, what it must do, and what we must do. This might seem like a lot of information, but we want to make sure the corporation and its representatives know exactly how this will work and what it will cost. Please read this information carefully and ask us about any part that is unclear.

### Getting Started

Before our work on the case begins, the corporation must pay us a retainer of **$15,000.00**. The retainer will be deposited into our attorney trust account and held as security for our fees and expenses. We may draw on the retainer to pay fees and expenses as they are incurred before the case is filed, and after the case is filed only to the extent the Bankruptcy Court allows. Any portion of the retainer that remains unearned at the end of our representation will be refunded to the corporation, or to whoever advanced it, subject to the section below titled If the Case Is Dismissed.

This agreement is not effective until we send the corporation a copy that we have also signed. No work on the case should be expected to begin until the retainer is paid in full. Although we may begin working on the case upon receipt of partial payment, we need not do so.

The retainer does not include the court filing fee, which is currently $1,738 for a chapter 11 case, or the other costs and expenses described below.

### How a Subchapter V Case Works

Subchapter V is a streamlined form of chapter 11 designed for smaller business debtors. To be eligible, the corporation must be engaged in commercial or business activity and its total noncontingent, liquidated debts must be under the limit set by federal law, at least half of which must have arisen from its business activity. That debt limit is adjusted periodically. We will confirm the corporation's eligibility before the case is filed, and the corporation understands that eligibility depends on the accuracy and completeness of the financial information it gives us.

In a subchapter V case, the corporation normally stays in control of its own assets and continues operating as the "debtor in possession." The Bankruptcy Court will appoint a subchapter V trustee, but that trustee does not take over the business. The trustee's role is to monitor the case, appear at hearings, and help the corporation and its creditors reach a consensual plan. The corporation can be removed as debtor in possession for cause, including fraud, dishonesty, or gross mismanagement, in which case the trustee would take over the business.

Several deadlines apply from the outset. The Bankruptcy Court will hold a status conference within 60 days after the case is filed, and no later than 14 days before that conference the corporation must file a report describing its efforts to reach a consensual plan. Only the corporation, and not any creditor, may propose a plan of reorganization, and the plan must be filed within 90 days after the case is filed unless the Bankruptcy Court extends that deadline. These deadlines move quickly, and the corporation's prompt cooperation is essential.

There are two ways a plan can be confirmed, and the difference matters. If every impaired class of creditors accepts the plan, it is confirmed as a consensual plan and the corporation is generally discharged from its remaining covered debts when the plan is confirmed. If the plan is confirmed over creditor objection, the subchapter V trustee will generally make the payments to creditors under the plan, and the discharge is not entered until the corporation completes the payments due in the first three years of the plan, or such longer period up to five years as the Bankruptcy Court sets.

Unlike an ordinary chapter 11 case, a subchapter V case does not require the corporation to pay quarterly fees to the U.S. Trustee, and a creditors' committee is usually not appointed.

**Who We Represent**

We represent only the corporation, not its officers, directors, shareholders, members, managers, employees, or any other related person or entity, and not anyone who has personally guaranteed the corporation's debts. The corporation's bankruptcy case will not erase, reduce, or permanently stay anyone's personal liability, including personal guarantees, personally co-signed debts, and certain tax obligations. Any individual connected to the corporation who wants advice about personal exposure or a personal bankruptcy filing should consult their own independent counsel, and we encourage them to do so. Any such representation by us would require a separate written agreement after a conflicts check. The corporation acknowledges that we have explained this limitation and gives its informed consent to it.

A corporation cannot represent itself in bankruptcy court. If our representation ends before the case does, the corporation must retain replacement counsel or the case may be dismissed.

**Authority to File**

The person signing this agreement represents that they are authorized to hire us and to act for the corporation. Before we file the case, the corporation must deliver to us a resolution or written consent, adopted in the manner required by its governing documents and state law, authorizing both this engagement and the bankruptcy filing. We cannot file the case without it.

**Our Obligations**

We will represent the corporation competently and diligently, keep the corporation reasonably informed about the case, and maintain the confidentiality of information shared with us in accordance with our professional obligations. Our representation covers the following services in the corporation's subchapter V case:

- Initial consultation, case analysis, and eligibility review.
- Review of the corporation's books, records, and financial documents.
- Preparation and filing of the bankruptcy petition, schedules, statements, and supporting documents.
- Preparation and filing of our application to be employed as the corporation's counsel and our applications for compensation.
- Representation at the initial debtor interview, the meeting of creditors, and the status conference.
- Preparation and filing of first-day and routine operating motions, including motions concerning cash collateral and the use, sale, or lease of property in the ordinary course.
- Negotiation with the subchapter V trustee, the U.S. Trustee, and creditors.
- Preparation, filing, and prosecution of the plan of reorganization and the report required before the status conference.
- Representation at the confirmation hearing.
- Routine communication with the subchapter V trustee, creditors, and the Bankruptcy Court, and review of notices and orders, until the case is closed or dismissed.

We reserve the right to decline any course of action we believe is unlawful, unethical, or contrary to the corporation's reasonable interest, in which case we will explain our position and discuss alternatives with the corporation's representatives.

This agreement does not include representation in adversary proceedings (separate lawsuits filed inside the bankruptcy case, such as a suit brought by the trustee) or appeals, whether filed by the corporation or against it. It also does not include contested valuation or lien-avoidance litigation, claim objections requiring an evidentiary hearing, sales of substantially all assets outside the ordinary course, employment or compensation disputes, tax or accounting services, nonbankruptcy litigation, corporate transactional work, or entity dissolution. It does not include representing any officer, director, shareholder, member, or guarantor personally in any matter, including trustee or creditor investigations and actions such as preference, fraudulent-transfer, breach-of-fiduciary-duty, or alter-ego claims. If the case is converted to chapter 7 or to an ordinary chapter 11 case, representation in the converted case is not included. The corporation acknowledges that we have explained these limitations and gives its informed consent to them. If any such matter arises, a separate fee agreement will be required before that work begins.

We have preliminarily determined, based on the information provided to us, that a subchapter V case is

an appropriate course for the corporation. If further analysis shows that a different chapter, a different form of chapter 11 case, or a nonbankruptcy alternative would be more appropriate, a new fee agreement will be required for any different engagement.

**The Corporation's Obligations**

The corporation's cooperation is the most important factor in making the case a success. Before the case is filed, the corporation agrees to provide us with complete and accurate financial information, as promptly as possible, including any forms we ask its representatives to complete and copies of any documents we request. The corporation also agrees to review all documents prepared by us, advise us about any necessary corrections or additions, and ask for explanations of any statements that are unclear.

For us to best represent the corporation's interests, the corporation must timely provide us with complete and truthful information and required documents, including about all property in which the corporation has an ownership or equitable interest, all debts the corporation owes, and any other information regarding its financial affairs. We are not responsible for collecting such information from the corporation's creditors or the public record; the corporation is responsible for making sure all of its creditors are listed on the bankruptcy schedules, using its books and records.

We need every creditor before we file the case. The list the corporation gives us is the list the Bankruptcy Court notifies, and a creditor left off it may never receive notice of the case. Include people as well as companies: owners or officers the corporation has borrowed from, a former landlord, anyone suing it, and anyone who guaranteed its debts.

If the corporation finds a creditor after we file, tell us immediately. Adding one late is never as good as listing it at the start. It can require an amended filing and an additional fee, and the time to do it is limited: 45 days after the case is filed for most creditors, and 155 days for government creditors. In a chapter 11 case the Bankruptcy Court may set an earlier deadline, and we will tell the corporation that date as soon as it is set.

Before the case is filed, the corporation also agrees not to sell, transfer, give away, or pay its assets to anyone, including owners, officers, family members, or other insiders, outside the ordinary course of business without discussing it with us first. Payments and transfers made before a bankruptcy filing can be undone and can create serious problems for the corporation and for the people who received them.

After the case is filed, federal law imposes specific duties on the corporation as debtor in possession. The corporation agrees to:

- Attend, through its senior management personnel, all meetings scheduled by the Bankruptcy Court or the U.S. Trustee, including the initial debtor interview, scheduling conferences, the status conference, and the meeting of creditors.
- File complete and accurate schedules and statements of financial affairs on time, and append to the petition its most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or a statement under penalty of perjury that none exists.
- Prepare and file all post-petition operating reports and other reports required by the Bankruptcy Rules or local rules, on time and every month.
- Close its pre-petition bank accounts and open new debtor-in-possession accounts as directed by the U.S. Trustee, and keep estate funds separate.
- Maintain insurance customary and appropriate to its industry, and provide proof of that insurance to the U.S. Trustee.
- Timely file all tax returns and other required government filings, and timely pay all post-petition taxes.
- Allow the U.S. Trustee or a designated representative to inspect its business premises, books, and records at reasonable times after reasonable prior written notice.
- Obtain our advice before entering into any transaction outside the ordinary course of business, including borrowing money, granting a lien, selling or leasing assets, paying pre-petition debts, or changing insider compensation.
- Commence and continue timely payments required by a confirmed plan.
- Review and comply with notices from the Bankruptcy Court and respond to communications from us.

- Keep us informed of all changes to the contact information for the corporation and its designated representative.
- Inform us immediately if a creditor contacts the corporation or if the corporation or its principals are sued or threatened with suit.
- Promptly provide all the information and documents we ask for.

Failure to perform these duties can result in the corporation's removal as debtor in possession, dismissal or conversion of the case, or denial of confirmation.

**Our Fees Must Be Approved by the Court**

Bankruptcy law treats our compensation differently from an ordinary engagement. Before we can be paid from the bankruptcy estate, the Bankruptcy Court must approve our employment as the corporation's counsel, and it must separately approve our fees and expenses. The ultimate fees awarded to us for our representation of the corporation in the chapter 11 case must be approved by the Bankruptcy Court, and the Bankruptcy Court may allow less than the amount we request.

We will file interim applications for compensation and reimbursement of expenses with the Bankruptcy Court to obtain authorization for further payment. Interim applications are generally made quarterly, but the corporation agrees that we may request approval to file them monthly. The corporation agrees to pay any award of compensation upon the entry of a court order authorizing the award, and to support our applications for employment and compensation.

The corporation understands that our right to hold and apply the retainer after the case is filed depends on the Bankruptcy Court's authorization, and that we will disclose the retainer and this agreement to the Bankruptcy Court.

**Legal Fees**

Except as the Bankruptcy Court orders otherwise, all services in the corporation's case will be billed on an hourly basis at the rates set forth below. Our professional fees are determined by multiplying the actual number of hours incurred by the hourly billing rate. Our hourly rates currently range from $245 per hour for paralegals and legal assistants to $495 per hour for attorneys. From time to time our hourly billing rates will change, and we will notify the corporation of any change in our rate structure. The corporation agrees to pay our fees and costs based on our then prevailing hourly rates and charges at the time the services are rendered.

The corporation agrees to the following hourly rates for these particular people:

Mike Assad: $495 (attorney tasks) $245 (paralegal tasks)

The minimum billing unit is one-tenth of an hour, and services will be recorded and billed in one-tenth of an hour increments. We will charge for all activities undertaken in providing legal services under this agreement, including conferences and their preparation; preparation and review of correspondence, email, and other documents; legal research and analysis; court and other appearances and their preparation; and communications with the corporation, other attorneys or persons involved with this matter, governmental agencies, and any other party whose contact is advisable for our representation. The legal personnel assigned to this matter may confer among themselves as required, and each will charge for the time expended. If more than one of our legal personnel attends a meeting, hearing, or other proceeding, each will charge for the time spent only if it is necessary in our judgment to have two or more personnel present. We charge for waiting and travel time, both local and out of town.

**Costs and Expenses**

The corporation agrees to pay all actual and necessary costs and expenses associated with the case. These commonly include court filing and recordation fees, court reporters' fees, computer legal research, messenger and other delivery services, postage, parking and other local travel expenses, photocopying and other reproduction costs, expert witness fees, appraiser fees, title searches, and consultant and investigator fees. The corporation also agrees to pay transportation, meals, lodging, and all other costs of any necessary travel by our personnel, in addition to the hourly rates charged for travel time. Photocopying is currently billed at $0.25 per page and motor travel at $0.75 per mile.

**Billing and Invoicing**

Before the case is filed, we will send the corporation monthly invoices itemizing the time spent on the

case, recorded in tenths of an hour, and any expenses incurred, with fees and expenses first applied against the retainer. Once the retainer has been exhausted, invoices are payable within 30 days of receipt. After the case is filed, fees and expenses will be sought through the applications described above, and we will continue to provide the corporation with monthly statements of time and expenses so it can monitor the cost of the case.

**If Someone Else Pays Our Fee**

The retainer may be paid by the corporation or by an owner, officer, affiliate, or other third party on the corporation's behalf. If someone other than the corporation pays, that person does not become our client, has no right to direct the case or our professional judgment, and is not entitled to the corporation's confidential information. The source of our compensation will be disclosed to the Bankruptcy Court as required by law.

**When Our Work Starts and Ends**

Our work begins once the corporation pays the retainer in full, but we cannot file the case until the corporation delivers the signed petition and the authorizing resolution or consent described above.

Our work ends once the Bankruptcy Court closes or dismisses the case or our representation is terminated. When our services conclude, all unpaid charges become immediately due, subject to any required court approval. At that time we will, upon written request, deliver the corporation's file to it along with any funds or property of the corporation in our possession. The work product produced during our representation remains our property. After our representation ends, we will have no duty to inform the corporation of future developments, deadlines, or changes in the law affecting this case, even if we continue to represent the corporation in other matters.

Before the case is filed, either of us may end this representation at any time.

After the case is filed, we cannot simply stop. If we believe that we cannot continue to represent the corporation due to lack of cooperation, failure to pay our bills as they become due, an ethical conflict, or any fact or circumstance that would render our continuing representation unlawful, unethical, or impracticable, we must ask the Bankruptcy Court for permission to withdraw. The corporation will receive notice and may contest the request at a hearing. We remain its counsel until the Bankruptcy Court enters an order permitting us to withdraw. The corporation may also ask the Bankruptcy Court to end our representation.

**If the Case Is Dismissed**

**If the case is dismissed, the corporation agrees that it is responsible for all unpaid fees and costs incurred, regardless of whether they were approved by the Bankruptcy Court. If legal action is taken to recover any amounts due under this agreement, the corporation agrees to pay all our costs of collection and attorney's fees of 33% of the total amount due, even if the proceeding is brought by us on our own behalf.**

The corporation authorizes and directs us to prepare, file, and prosecute in the case a motion for entry of an order providing that, if the case is dismissed, the Bankruptcy Court will retain jurisdiction after dismissal to hear and determine all applications for compensation and reimbursement of expenses filed by us, the subchapter V trustee, and all other professionals employed in the case under 11 U.S.C. § 503, and that the pre-petition retainer held in our trust account under this agreement will not revest in the corporation and will remain available to pay those fees and expenses the Bankruptcy Court ultimately allows. The corporation expressly consents to that relief and authorizes us to take all steps reasonably necessary to obtain and enforce it, including presenting evidence, negotiating consensual language, and seeking reconsideration or appellate review.

**When We Will File the Case**

The clock starts when two things are done: the corporation has paid the retainer in full, and we have received every document and every piece of information we asked the corporation for. From that point, our goal is to file the case within 30 days. If we then ask for something further, such as a missing tax return, an updated pay stub, or a corrected form, a new 30 days starts on the day we receive the last item we asked for.

Our 30-day timeline is a goal and not a promise, and a few things can change it. Sometimes waiting is better for the corporation, and we will say so if we think it is. Filing at the wrong moment can let the

trustee undo a recent payment or transfer, or leave a cash collateral budget or first-day motion unfinished. Natural disasters, closures of the Bankruptcy Court, problems with its electronic filing system, and other events outside our control may also extend this timeline.

**If Something Urgent Is Coming**

The corporation must tell us in writing as soon as it learns of anything that would cause it serious and irreparable harm if the case is not filed before it happens. Examples include, but are not limited to, a sheriff's sale or foreclosure sale date, a bank levy or writ of execution, the appointment of a receiver, a secured creditor's notice of sale of collateral, a landlord lockout, a utility shutoff, and the suspension or revocation of a license the business needs to operate.

The notice should tell us what is happening, the date it is scheduled to happen, and include copies of any papers received about it. When we have that notice, we will file the case on an emergency basis, ahead of our normal 30-day timeline.

Two things still have to happen even in an emergency. The retainer must be paid in full, and the corporation must deliver the signed petition and the authorizing resolution or consent.

An emergency filing may also mean we file the case in two steps. First we file the petition, the document that opens the case and stops collection. Then we file the rest of the paperwork: the schedules and statements that list everything the corporation owns, everyone it owes, and its income and expenses. The Bankruptcy Court sets the deadline for that second step, generally 14 days. If we do not have the information in time to meet it, the case can be dismissed.

We can only act on what we know. If the corporation does not tell us in writing about something like this, we will not know to move faster, and we are not responsible for what happens as a result.

**Until the Case Is Actually Filed**

If the corporation is being sued or its property is at risk of levy, repossession, or any similar enforcement action, the corporation should assume that all such risk remains until we give the corporation a certificate with the bankruptcy's unique seven-digit case number signed by the Clerk of the Bankruptcy Court. Nothing in this agreement stops a creditor from acting in the meantime. Only the filing of the case does that.

**File Retention**

We will retain copies of all documents in the case electronically for at least five years. The corporation agrees to retain all of its original documents for its records and to only give us copies of them. Any paper documents provided to us may be converted to digital format for retention purposes. If they are, the documents will be destroyed immediately, without further notice. The corporation authorizes the secure destruction of its file five years after the file is closed and agrees that we will have no liability for destroying any records, documents, or exhibits still in our possession and relating to this matter at the end of five years.

**Price Adjustment**

We may adjust the rates and dollar amounts in this agreement, including our hourly rates, on April 1 of each year to reflect the change in the Consumer Price Index for the 1-year period ending December 31 of the prior year. Any adjustment will take effect only after we provide the corporation with at least 21 days' prior written notice and will apply only to services rendered after the effective date of the adjustment.

**Exceptions and Special Provisions**

The following exceptions and special provisions supersede any conflicting provisions above: **NONE**

**No Guarantees**

Nothing in this agreement should be construed as a promise or guarantee about the outcome of any matter that we are handling on the corporation's behalf. Our comments about the outcome of matters pertaining to the corporation are expressions of opinion only. There are risks in filing for bankruptcy, including the possible liquidation or loss of property. Bankruptcy law is subject to different interpretations, and there are inherent risks in how courts will apply various provisions. In a chapter 11

case the corporation cannot dismiss its case without prior court approval, and the case can be converted to chapter 7 without the corporation's approval.

**Disclosure of Compensation**

Bankruptcy law requires us to file with the Bankruptcy Court a statement disclosing the compensation the corporation has agreed to pay us in connection with this case, including its source, and to supplement that statement if the arrangement changes. See 11 U.S.C. § 329 and Federal Rule of Bankruptcy Procedure 2016(b). That court filing is separate from this agreement, and nothing in this agreement limits our obligation to make it. As described above, the compensation we ultimately receive remains subject to review and approval by the Bankruptcy Court.

**General Terms**

This agreement contains all of the terms applicable to our representation and may not be modified except in a writing signed by both parties. There are no promises, terms, conditions, or obligations applicable to our representation except as expressly set forth here. These terms supersede any previous oral or written agreements between the parties with respect to our representation of the corporation. All future work for the corporation in other matters will be handled in accordance with this agreement at our regular hourly rates unless otherwise agreed in writing.

This agreement is governed by the laws of the State of New Jersey. Any dispute between the parties within the Bankruptcy Court's jurisdiction will be resolved by that court. All other disputes will be heard exclusively by the Superior Court of New Jersey, Camden Vicinage. Any fee dispute outside the Bankruptcy Court's jurisdiction must first be submitted to the Philadelphia Bar Association Fee Dispute Resolution Program or the New Jersey Office of Attorney Ethics Fee Arbitration System before being filed in the Superior Court. If any provision of this agreement is held to be invalid or unenforceable, the remaining provisions will continue in full force and effect.

The corporation agrees that this agreement may be electronically signed and that an electronic signature is the same as a handwritten signature for all purposes, including validity, enforceability, and admissibility. By signing this agreement electronically, the corporation's representative acknowledges declining the option to sign a paper agreement and understands that the corporation will receive a signed copy by email. The corporation also authorizes us and our agents to communicate with it and its authorized representatives by mobile phone, text message, and email, including leaving voicemail messages with details about the case. No form of communication is completely secure, and these forms of communication carry some risk of improper interception. The corporation agrees to monitor the email addresses and phone numbers it provides (including junk and spam folders) for important communications about the case, and represents that no one outside its authorized representatives has access to that email, voicemail, or text messages.

**Signatures**

By signing below, the parties agree to all the above. The person signing for the corporation represents that they have read, understand, and agree to the foregoing on behalf of the corporation, and that they are authorized to execute this agreement on its behalf.

By: Joseph Oh — 08/25/2026

**UTU Corp.** — Date

By: [signature] — 08/24/2026

Law Office of Mike Assad, P.C. — Date