**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: UTU Corp.,<br><br>*Debtor*. | Case No. 26-14387-amc<br>Chapter 11 |

**Chapter 11 Subchapter V Plan of Reorganization**

To Chief U.S. Bankruptcy Judge Ashely M. Chan, U.S. Trustee Andrew R. Vara, Subchapter V Trustee Holly Smith Miller, and all creditors, holders of equity interests, and interested parties:

Debtor UTU Corp., through its attorney, submits this Chapter 11 Subchapter V Plan of Reorganization under 11 U.S.C. §§ 1189 and 1190.

Date: November 15, 2026

**LAW OFFICE OF MIKE ASSAD, P.C.**
*Attorney for Debtor*

By: ______________________________
Michael I. Assad
923 Haddonfield Road, Suite 336
Cherry Hill, NJ 08002
609-808-3300
mike@mikeassad.law

**Table of Contents**


**Background** .... **4**

Description and History of the Debtor's Business .... 4
Liquidation Analysis .... 4
Feasibility of Plan and Continued Operations .... 4
The Debtor's Bankruptcy Case .... 4

**Article 1 Summary** .... **4**

(a) Nature of the Plan .... 4
(b) Classes .... 4
(c) Distributions .... 4
(d) Notice .... 4

**Article 2 Classification and Treatment of Claims and Interests** .... **5**

(a) Administrative Expense Claims .... 5
(b) Priority Tax Claims .... 5
(c) Statutory Fees .... 5
(d) Class 1: Priority Claims .... 5
(e) Class 2: Secured Claims .... 6
(f) Class 3: General Unsecured Claims .... 6
(g) Class 4: Equity Interests .... 7

**Article 3 Confirmation and Voting** .... **7**

(a) Consensual Confirmation .... 7
(b) Nonconsensual Confirmation .... 7
(c) Voting Rights and Plan Acceptance .... 7

**Article 4 Allowance and Disallowance of Claims** .... **7**

(a) Disputed Claim .... 7
(b) Delay of Distribution .... 8
(c) Settlement of Dispute .... 8
(d) Objection Deadline .... 8
(e) Reserve for Disputed Claims .... 8

**Article 5 Executory Contracts and Unexpired Leases** .... **9**

(a) Assumption .... 9
(b) Rejection .... 9
(c) Rejection Claims .... 9

**Article 6 Means for Implementation of the Plan** .... **9**

(a) Funding .... 9
(b) Operations .... 9
(c) Use of Funds .... 9
(d) Plan Payments and Disbursing Agent .... 9
(e) Prepayment .... 10
(f) Employment of Professionals .... 10
(g) Post-Confirmation Management .... 10
(h) Retention of Claims .... 10
(i) Sale of the Debtor's Business .... 10

**Article 7** **Default Remedies** .......... **11**

**Article 8** **General Provisions** .......... **11**
(a) Definitions and Rules of Construction .......... 11
(b) Time Computation .......... 12
(c) Effective Date .......... 12
(d) Vesting of Property .......... 12
(e) Severability .......... 13
(f) Binding Effect .......... 13
(g) Captions .......... 13
(h) Controlling Effect .......... 13
(i) Organizational Documents .......... 13

**Article 9** **Discharge** .......... **13**
(a) Discharge on Consensual Confirmation .......... 13
(b) Discharge on Nonconsensual Confirmation .......... 13

**Article 10** **Retention of Jurisdiction** .......... **14**

**Exhibit A** **Liquidation Analysis** .......... **15**

**Exhibit B** **Projected Disposable Income** .......... **16**

**Exhibit C** **Treatment of Claims and Interests** .......... **17**

**Exhibit D** **Treatment of Leases and Executory Contracts** .......... **18**

## Background

**Description and History of the Debtor's Business**

The Debtor is a business corporation organized under the laws of the Commonwealth of Pennsylvania. Since 2015, the Debtor has operated a restaurant at 4800 Baltimore Avenue, Philadelphia, Pennsylvania, under the name "The Gold Standard Cafe." The Debtor's revenue is derived primarily from restaurant sales, catering, and orders placed through online delivery platforms.

**Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and holders of equity interests who do not accept the Plan will receive at least as much under the Plan as they would receive in a chapter 7 liquidation. A liquidation analysis is attached as Exhibit A.

**Feasibility of Plan and Continued Operations**

The Debtor must show that it will have enough cash over the life of the Plan to make the required Plan payments and operate its business. Projected financial information is attached as Exhibit B. The final Plan payment is expected to be paid in Plan Month 60.

**The Debtor's Bankruptcy Case**

The Debtor filed this chapter 11 bankruptcy case on October 19, 2026. The Debtor participated in an initial interview with the U.S. Trustee on November 5, 2026. The meeting of creditors under 11 U.S.C. § 341(a) is scheduled for November 20, 2026, and the status conference under 11 U.S.C. § 1188(a) is scheduled for December 2, 2026.

## Article 1
## Summary

(a) **Nature of the Plan.** This Plan of Reorganization under chapter 11 of title 11, United States Code, proposes to pay creditors of the Debtor from its future income.

(b) **Classes.** The Plan provides for:

(1) one class of priority claims;

(2) one class of secured claims;

(3) one class of general unsecured claims; and

(4) one class of equity interests.

(c) **Distributions.** General unsecured creditors holding allowed claims will receive distributions as provided in Article 2(f). This Plan also provides for the payment of Administrative Expense Claims and priority claims.

(d) **Notice.** All creditors and holders of equity interests should refer to Article 2 of this Plan for information regarding the precise treatment of their claim. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

## Article 2
## Classification and Treatment of Claims and Interests

(a) **Administrative Expense Claims.**

(1) *Description.* This subsection applies to each allowed Administrative Expense Claim.

(2) *Treatment.* Each holder will be paid in full on the later of the Effective Date or the date the claim is allowed, unless:

(A) the holder agrees to different treatment; or

(B) if the Plan is confirmed under 11 U.S.C. § 1191(b), 11 U.S.C. § 1191(e) permits different treatment.

(3) *Debtor's counsel.* Debtor's counsel has agreed to accept payment of its allowed fees and expenses in monthly installments of $500.00, beginning in Plan Month 1, until paid in full.

(4) *Subchapter V Trustee.* If the Plan is confirmed under 11 U.S.C. § 1191(b), the allowed compensation and expenses of the Subchapter V Trustee not paid before the Effective Date will be paid under 11 U.S.C. § 1191(e) in equal monthly installments in Plan Months 1 through 36.

(5) *Classification and voting.* These claims are not classified and not entitled to vote.

(b) **Priority Tax Claims.**

(1) *Description.* This subsection applies to each allowed Priority Tax Claim.

(2) *Treatment.* Each holder will be paid as provided in Exhibit C.

(3) *Disputed claims.* A Priority Tax Claim that is a Disputed Claim and is later allowed will be paid as provided in Article 4(e)(4).

(4) *Classification and voting.* These claims are not classified and not entitled to vote.

(c) **Statutory Fees.**

(1) *Description.* This subsection applies to all fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date.

(2) *Treatment.* These fees have been paid or will be paid on the Effective Date.

(3) *Classification, impairment, and voting.* These claims are not classified, not impaired, and not entitled to vote.

(d) **Class 1: Priority Claims.**

(1) *Description.* Class 1 consists of allowed claims entitled to priority under 11 U.S.C. § 507(a), except:

(A) Administrative Expense Claims under 11 U.S.C. § 507(a)(2); and

(B) Priority Tax Claims under 11 U.S.C. § 507(a)(8).

(2) *Known claims.* The Debtor is not aware of any Class 1 claims.

(3) *Treatment.* Each allowed Class 1 claim will be paid in full in cash:

(A) on the later of the Effective Date or the date the claim is allowed; or

(B) on other terms the holder and the Debtor agree to in writing.

(4) *Impairment and voting.* This class is not impaired and not entitled to vote.

(e) **Class 2: Secured Claims.**

(1) *Description.* Class 2 consists of claims secured by the Debtor's personal property to the extent allowed as secured under 11 U.S.C. § 506(a).

(2) *Treatment.* Class 2 claims are treated as follows:

(A) *Payments.* These claims will be paid as provided in Exhibit C.

(B) *Lien.* The holder retains its lien until the allowed secured portion of its claim is paid in full. The lien is released on payment.

(C) *Deficiency.* Any portion of the claim not allowed as secured is classified and treated as a general unsecured claim in Class 3.

(3) *Impairment and voting.* This class is impaired and entitled to vote.

(f) **Class 3: General Unsecured Claims.**

(1) *Description.* Class 3 consists of all allowed general unsecured claims.

(2) *Treatment.* Holders will receive pro rata distributions of the Debtor's projected disposable income, as defined in 11 U.S.C. § 1191(d), that is:

(A) received during the period stated in paragraph (3); and

(B) remaining after payment of the claims and fees under Article 2(a), (b), and (c) and the claims in Classes 1 and 2.

(3) *Distribution period.* For purposes of 11 U.S.C. § 1191(c)(2), the period for distributions to Class 3 is Plan Years 1 through 3.

(4) *Timing.* Distributions will be made quarterly, within thirty days after the end of each three-month period:

(A) beginning with the three-month period that ends with Plan Month 15; and

(B) ending with the three-month period that ends with Plan Month 36.

(5) *Projected distribution.* Based on the projections in Exhibit B, the Debtor projects total distributions to Class 3 of $2,003, about 0.50% of known general unsecured claims of $396,249.28.

(6) *Impairment and voting.* This class is impaired and entitled to vote.

(g) **Class 4: Equity Interests.**

(1) *Description.* Class 4 consists of all equity interests of the Debtor.

(2) *Treatment.* Equity interests will be retained, unaltered, and outstanding.

(3) *Impairment and voting.* This class is not impaired and not entitled to vote.

## Article 3
## Confirmation and Voting

(a) **Consensual Confirmation.** The Debtor seeks confirmation of the Plan under 11 U.S.C. § 1191(a), which requires that the Plan meet all applicable requirements of 11 U.S.C. § 1129(a) other than 11 U.S.C. § 1129(a)(15), including acceptance by each impaired class under the rules in Article 3(c).

(b) **Nonconsensual Confirmation.** If the Plan cannot be confirmed under 11 U.S.C. § 1191(a), the Debtor will seek confirmation under 11 U.S.C. § 1191(b), which permits confirmation without the acceptance of every impaired class if the Plan does not discriminate unfairly, and is fair and equitable, with respect to each impaired class that has not accepted it.

(c) **Voting Rights and Plan Acceptance.**

(1) *Who may vote.* A creditor may vote to accept or reject the Plan only if:

(A) the creditor's claim is in a class that is impaired; and

(B) the claim is allowed, or deemed allowed under 11 U.S.C. § 502(a).

(2) *Acceptance by a class.* A class accepts the Plan when more than one-half in number and at least two-thirds in dollar amount of the allowed claims that actually vote, vote in favor of the Plan.

(3) *Unimpaired classes.* A class that is not impaired is deemed to accept the Plan.

## Article 4
## Allowance and Disallowance of Claims

(a) **Disputed Claim.** A "Disputed Claim" is a claim that has not been allowed or disallowed, and as to which either:

(1) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(2) no proof of claim has been filed, and the Debtor has scheduled the claim as disputed, contingent, or unliquidated.

(b) **Delay of Distribution.** No distribution will be made on account of a Disputed Claim unless the claim is allowed. Article 4(e) governs the reserve.

(c) **Settlement of Dispute.** The Debtor may settle and compromise a Disputed Claim with Court approval and in compliance with Fed. R. Bankr. P. 9019.

(d) **Objection Deadline.**

(1) *Deadline.* The Debtor or any other party in interest may object to a claim no later than the later of:

(A) sixty days after the Effective Date; or

(B) sixty days after the claim is filed.

(2) *Extension.* The deadline in paragraph (1) applies unless the Court extends it.

(e) **Reserve for Disputed Claims.**

(1) *Reserve.* Until a Disputed Claim is allowed or disallowed, the Debtor will hold in reserve, from each distribution to Class 3, the amount that would be distributed on the Disputed Claim if it were allowed:

(A) in the amount filed; or

(B) if no proof of claim was filed, in the amount scheduled.

(2) *Allowance.* If the claim is allowed, the Debtor will pay the holder from the reserve, with its next distribution, what the holder would have received had the claim been allowed on the Effective Date.

(3) *Disallowance.* If the claim is disallowed, the Debtor will distribute the reserved amount pro rata to holders of allowed Class 3 claims with the next distribution.

(4) *Disputed Priority Tax Claims.* If a Priority Tax Claim that is a Disputed Claim is allowed, the Debtor will pay it, as required by 11 U.S.C. § 1129(a)(9)(C):

(A) in equal monthly installments;

(B) beginning the first full month after the claim is allowed;

(C) ending no later than October 19, 2031; and

(D) with interest at the rate determined under 11 U.S.C. § 511.

## Article 5
## Executory Contracts and Unexpired Leases

(a) **Assumption.**

(1) *Assumed contracts and leases.* On the Effective Date, the Debtor will be deemed to have assumed, under 11 U.S.C. §§ 365 and 1123(b)(2), the executory contracts and unexpired leases listed in Exhibit D.

(2) *Cure.* The Debtor will pay the cure amount listed in Exhibit D for each assumed contract or lease on the Effective Date.

(b) **Rejection.** On the Effective Date, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases except those assumed under Article 5(a)(1).

(c) **Rejection Claims.**

(1) *Deadline.* A proof of claim arising from the rejection of an executory contract or unexpired lease under Article 5(b) must be filed no later than thirty days after the Effective Date.

(2) *Classification.* An allowed claim arising from rejection is a general unsecured claim in Class 3.

## Article 6
## Means for Implementation of the Plan

(a) **Funding.** Subject to Article 6(i), the Plan will be funded exclusively through income derived from operation of the Debtor's restaurant.

(b) **Operations.** Subject to Article 6(i), the Debtor will retain and continue to operate the restaurant throughout the Plan Term.

(c) **Use of Funds.** The Debtor will use its income to pay ordinary operating expenses, Administrative Expense Claims, and distributions to creditors as provided in Articles 2, 4, and 5.

(d) **Plan Payments and Disbursing Agent.**

(1) *Disbursing agent.* The Debtor will serve as the disbursing agent and will make all payments required by the Plan during the Plan Term. The Subchapter V Trustee will not serve as disbursing agent.

(2) *Rounding.* Each payment under the Plan will be rounded to the nearest whole dollar. Any difference will be added to or subtracted from the final payment to that holder.

(3) *Subchapter V Trustee after nonconsensual confirmation.* If the Plan is confirmed under 11 U.S.C. § 1191(b):

(A) the Subchapter V Trustee's appointment will continue after confirmation;

(B) the Subchapter V Trustee's duties after confirmation are limited to monitoring the case to ensure that payments under the Plan begin and continue; and

(C) the Subchapter V Trustee will file the Chapter 11 Subchapter V Trustee's Final Report and Account when the Debtor completes the payments under the Plan.

(4) *Future earnings.* As required by 11 U.S.C. § 1190(2), the Debtor submits to the supervision and control of the Subchapter V Trustee so much of its future earnings and other future income as is necessary for the execution of the Plan. This paragraph does not make the Subchapter V Trustee the disbursing agent.

(e) **Prepayment.** The Debtor may prepay any allowed claim, in whole or in part, at any time without penalty.

(f) **Employment of Professionals.** On and after the Effective Date, the Debtor may, in the ordinary course and without Court approval, pay the reasonable fees and expenses of professional persons incurred on or after the Effective Date, including fees and expenses incurred in connection with the implementation and consummation of the Plan.

(g) **Post-Confirmation Management.** The Debtor's management after confirmation, and the compensation of any insider the Debtor will employ, will continue as disclosed in the Debtor's notice under L.B.R. 4002-1 filed at ECF No. 64.

(h) **Retention of Claims.**

(1) *Retention.* Under 11 U.S.C. § 1123(b)(3)(B), the Debtor retains, and may enforce after the Effective Date, all claims and causes of action of the Debtor and the estate, including actions under 11 U.S.C. §§ 544 through 553.

(2) *Avoidance actions.* The Debtor does not intend to pursue avoidance actions.

(i) **Sale of the Debtor's Business.**

(1) *Court approval required.* The Debtor may sell all or substantially all of its assets during the Plan Term only with the Court's approval, on motion under 11 U.S.C. § 363 and Fed. R. Bankr. P. 2002(a)(2) and 6004.

(2) *Service.* The motion must be served on:

(A) the SBA;

(B) the U.S. Trustee;

(C) the Subchapter V Trustee, if still serving; and

(D) all creditors.

(3) *Contents of motion.* The motion must state:

(A) the purchaser;

(B) the price; and

(C) the terms of the sale.

(4) *Application of proceeds.* At closing, the Debtor will apply the proceeds of the sale in the following order:

(A) the costs of the sale, including any broker's commission, transfer taxes, and prorations;

(B) the unpaid balance of the allowed Class 2 claim, upon which the lien securing that claim will be released;

(C) the unpaid balance of all allowed Administrative Expense Claims and all unpaid fees under 28 U.S.C. § 1930;

(D) the unpaid balance of all allowed Priority Tax Claims and Class 1 claims, and any amount required to be held in reserve for Disputed Claims under Article 4(e);

(E) to holders of allowed Class 3 claims, pro rata, the unpaid balance of the total projected distribution to Class 3 stated in Article 2(f)(5); and

(F) the balance to the Debtor.

(5) *Insufficient proceeds.* If the proceeds are not sufficient to pay the amounts in paragraph (4) in full, the Debtor will continue to make the remaining payments required by the Plan.

(6) *No default.* A sale approved under this subsection is not a default under the Plan.

## Article 7
## Default Remedies

Remedies for a default, if any, will be prescribed in the Confirmation Order.

## Article 8
## General Provisions

(a) **Definitions and Rules of Construction.**

(1) *Title 11 terms.* The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 apply when terms defined or construed in title 11 are used in this Plan.

(2) *Defined terms.* In this Plan:

(A) “Administrative Expense Claim” means a claim for an administrative expense allowed under 11 U.S.C. § 503(b).

(B) “Confirmation Order” means the order confirming the Plan.

(C) “Court” means the United States Bankruptcy Court for the Eastern District of Pennsylvania.

(D) “Debtor” means UTU Corp.

(E) “Disputed Claim” has the meaning given in Article 4(a).

(F) “Effective Date” has the meaning given in Article 8(c).

(G) “Plan” means this Chapter 11 Subchapter V Plan of Reorganization, including its exhibits.

(H) “Plan Month” means each calendar month during the Plan Term, beginning with the first full calendar month after the Effective Date, which is Plan Month 1.

(I) “Plan Term” means the period beginning on the Effective Date and ending on the last day of Plan Month 60.

(J) “Plan Year” means each period of twelve consecutive Plan Months, beginning with Plan Month 1.

(K) “Priority Tax Claim” means a claim entitled to priority under 11 U.S.C. § 507(a)(8).

(L) “SBA” means the U.S. Small Business Administration.

(M) “Subchapter V Trustee” means the trustee appointed in this case under 11 U.S.C. § 1183(a), and any successor.

(N) “U.S. Trustee” means the United States Trustee for Region 3.

(b) **Time Computation.** All periods of time stated in this Plan are computed in accordance with Fed. R. Bankr. P. 9006(a).

(c) **Effective Date.**

(1) *General rule.* The "Effective Date" is the first business day following the date that is fourteen days after entry of the Confirmation Order.

(2) *Stay.* If a stay of the Confirmation Order is in effect on that date, the Effective Date is the first business day after the stay expires or is terminated.

(d) **Vesting of Property.**

(1) *Consensual confirmation.* If the Plan is confirmed under 11 U.S.C. § 1191(a), all property of the estate will vest in the Debtor on the Effective Date.

(2) *Nonconsensual confirmation.* If the Plan is confirmed under 11 U.S.C. § 1191(b), then except as otherwise provided in the Confirmation Order, property of the estate, including property described in 11 U.S.C. § 1186(a), will vest in the Debtor on the Effective Date.

(e) **Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

(f) **Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

(g) **Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

(h) **Controlling Effect.** Except as otherwise provided in this Plan, and unless a rule of law or procedure is supplied by federal law, regulation, or rule, the laws of the Commonwealth of Pennsylvania govern this Plan and all agreements, documents, and instruments executed in connection with this Plan.

(i) **Organizational Documents.** As required by 11 U.S.C. § 1123(a)(6), the Debtor's organizational documents will prohibit the issuance of nonvoting equity securities and will provide an appropriate distribution of voting power among the classes of equity securities that have voting power.

## Article 9
## Discharge

(a) **Discharge on Consensual Confirmation.** If the Plan is confirmed under 11 U.S.C. § 1191(a):

(1) *Discharge.* On confirmation of the Plan, the Debtor will be discharged from any debt that arose before confirmation, to the extent specified in 11 U.S.C. § 1141(d)(1)(A).

(2) *Exceptions.* Despite paragraph (1), the Debtor will not be discharged of any debt:

(A) imposed by the Plan; or

(B) to the extent provided in 11 U.S.C. § 1141(d)(6).

(b) **Discharge on Nonconsensual Confirmation.** If the Plan is confirmed under 11 U.S.C. § 1191(b):

(1) *Timing.* Confirmation does not discharge any debt provided for in the Plan until the Court grants a discharge, as provided in 11 U.S.C. § 1192, on completion of all payments due within:

(A) the first three years of the Plan; or

(B) any longer period not exceeding five years that the Court fixes.

(2) *Exceptions.* The Debtor will not be discharged from any debt:

(A) on which the last payment is due after the period that applies under paragraph (1); or

(B) excepted from discharge under 11 U.S.C. § 523(a), except as provided in Fed. R. Bankr. P. 4007(c).

## Article 10
## Retention of Jurisdiction

The Court retains jurisdiction after confirmation, to the extent permitted by law, to:

(a) interpret and enforce the Plan and the Confirmation Order;

(b) modify the Plan under 11 U.S.C. § 1193(b) or (c);

(c) enter orders under 11 U.S.C. § 1142(b) directing the Debtor or any other necessary party to perform any act necessary for the consummation of the Plan;

(d) hear and determine objections to claims and disputes about distributions;

(e) determine the amount of a secured claim under 11 U.S.C. § 506(a);

(f) determine any tax liability under 11 U.S.C. § 505(a);

(g) hear and determine disputes about the assumption or rejection of executory contracts and unexpired leases, including cure amounts;

(h) hear and determine applications for compensation of professionals and the Subchapter V Trustee;

(i) hear and determine matters concerning the Subchapter V Trustee's service and final report under Article 6(d)(3);

(j) hear and determine the claims and causes of action retained under Article 6(h);

(k) hear and determine motions to sell property under Article 6(i);

(l) hear and determine motions under 11 U.S.C. § 1112, including on account of a default under the Plan;

(m) grant a discharge under 11 U.S.C. § 1192;

(n) enforce any discharge under 11 U.S.C. § 1141(d) or 11 U.S.C. § 1192; and

(o) enter a final decree closing the case.

**Exhibit A**
**Liquidation Analysis**

**Assets**

| | |
|---|---|
| Cash and cash equivalents | $13,000 |
| Deposits and prepayments | $0 |
| Accounts receivable | $1,000 |
| Investments | $0 |
| Inventory | $3,000 |
| Farming and fishing-related assets | $0 |
| Office furniture, fixtures, and equipment; and collectibles | $2,100 |
| Machinery, equipment, and vehicles | $6,300 |
| Real property | $0 |
| Intangibles and intellectual property | $0 |
| All other assets | $0 |
| **Total assets at liquidation value** | **$25,400** |
| **Less:** Secured creditors' recoveries | $25,400 |
| **Less:** Chapter 7 trustee fees and expenses | $3,290 |
| **Less:** Chapter 11 administrative expenses | $37,000 |
| **Less:** Priority claims (excluding administrative expense claims) | $1,500 (estimated) |
| (1) Balance for unsecured claims | $0 |
| (2) Total dollar amount of unsecured claims | $396,249 |
| ***Percentage of claims which unsecured creditors would receive or retain in a chapter 7 liquidation*** | ***0%*** |
| ***Percentage of claims which unsecured creditors will receive under this plan*** | ***0.50%*** |

**Exhibit B**
**Projected Disposable Income**

| | Plan Year 1 | Plan Year 2 | Plan Year 3 | Plan Year 4 | Plan Year 5 | Total |
|---|---|---|---|---|---|---|
| Net revenue | $552,000 | $552,000 | $552,000 | $552,000 | $552,000 | $2,760,000 |
| Cost of goods sold | $180,000 | $180,000 | $180,000 | $180,000 | $180,000 | $900,000 |
| **Gross margin** | **$372,000** | **$372,000** | **$372,000** | **$372,000** | **$372,000** | **$1,860,000** |
| **Operating expenses** | | | | | | |
| Payroll | $230,400 | $230,400 | $230,400 | $230,400 | $230,400 | $1,152,000 |
| Rent and utilities | $60,000 | $60,000 | $60,000 | $60,000 | $60,000 | $300,000 |
| Sales and use taxes | $30,000 | $30,000 | $30,000 | $30,000 | $30,000 | $150,000 |
| Other operating expenses | $36,000 | $36,000 | $36,000 | $36,000 | $36,000 | $180,000 |
| **Total operating expenses** | **$356,400** | **$356,400** | **$356,400** | **$356,400** | **$356,400** | **$1,782,000** |
| **Operating income** | **$15,600** | **$15,600** | **$15,600** | **$15,600** | **$15,600** | **$78,000** |
| **Administrative claims** | | | | | | |
| Trustee, pre-confirmation | $2,333 | $2,333 | $2,334 | $0 | $0 | $7,000 |
| Trustee, post-confirmation | $500 | $500 | $500 | $500 | $500 | $2,500 |
| Debtor’s counsel | $6,000 | $6,000 | $6,000 | $6,000 | $6,000 | $30,000 |
| **Total administrative claims** | **$8,833** | **$8,833** | **$8,834** | **$6,500** | **$6,500** | **$39,500** |
| **Projected disposable income** | **$6,767** | **$6,767** | **$6,766** | **$9,100** | **$9,100** | **$38,500** |
| **Plan payments** | | | | | | |
| Priority tax claims | $1,557 | $0 | $0 | $0 | $0 | $1,557 |
| Class 2: SBA | $5,580 | $5,580 | $5,580 | $5,580 | $5,575 | $27,895 |
| Class 3: Unsecured claims | $0 | $1,002 | $1,001 | $0 | $0 | $2,003 |
| **Total Plan payments** | **$7,137** | **$6,582** | **$6,581** | **$5,580** | **$5,575** | **$31,455** |
| **Net cash flow** | **($370)** | **$185** | **$185** | **$3,520** | **$3,525** | **$7,045** |
| Beginning cash | $13,000 | $12,630 | $12,815 | $13,000 | $16,520 | $13,000 |
| **Ending cash** | **$12,630** | **$12,815** | **$13,000** | **$16,520** | **$20,045** | **$20,045** |

## Monthly Plan Payments

| Payment | Months 1–12 | Months 13–36 | Months 37–60 |
|---|---|---|---|
| Class 2: SBA | $465 | $465 | $465 |
| Priority tax claims | $130 | $0 | $0 |
| Debtor’s counsel | $500 | $500 | $500 |
| Trustee, pre-confirmation balance | $194 | $194 | $0 |
| Trustee, post-confirmation (average) | $42 | $42 | $42 |
| Class 3 (average; paid quarterly) | $0 | $83 | $0 |
| **Total monthly payments** | **$1,331** | **$1,284** | **$1,007** |

**Exhibit C**
**Treatment of Claims and Interests**

| Class | Description | Impairment | Treatment |
|---|---|---|---|
| **Unclassified Claims** | | | |
| None | **Priority tax claims of:**<br>City of Philadelphia (wage tax, period ending September 30, 2026; part of Claim No. 2)<br>**Allowed amount:**<br>As allowed under 11 U.S.C. § 502 (estimated $1,500) | Unclassified; not entitled to vote. | **Payment Interval**<br>Equal monthly installments on allowed amount over 12 months<br>**Payments Begin**<br>Plan Month 1<br>**Payments End**<br>Plan Month 12<br>**Interest Rate**<br>7% |
| **Classified Claims** | | | |
| 2 | **Secured claim of:**<br>U.S. Small Business Administration (Claim No. 1; filed amount $421,605.43)<br>**Collateral description:**<br>Debtor's personal property, proceeds, and replacements.<br>**Allowed secured amount:**<br>$25,400.00<br>**Priority of lien:**<br>First (UCC) | Impaired and entitled to vote. | **Payment Interval**<br>Monthly installments of $465 on allowed secured amount over 60 months<br>**Payments Begin**<br>Plan Month 1<br>**Payments End**<br>Plan Month 60<br>**Interest Rate**<br>3.75% |

**Exhibit D**
**Treatment of Leases and Executory Contracts**

| Counterparty | Description | Treatment | Cure Amount |
|---|---|---|---|
| Melani Lamond and Brian Ratigan | Lease of 4800 Baltimore Avenue, Philadelphia, PA (restaurant premises) | Assumed | $0.00 |
| Toast, Inc. | Point-of-sale and card-processing agreement | Assumed | $0.00 |
| DoorDash, Inc. | Online ordering and delivery agreement | Assumed | $0.00 |
| Uber Technologies, Inc. | Online ordering and delivery agreement (Uber Eats) | Assumed | $0.00 |
| Grubhub Holdings Inc. | Online ordering and delivery agreement | Assumed | $0.00 |
| Owner.com Inc. | Online ordering agreement | Assumed | $0.00 |
| University of Pennsylvania | Catering services agreement | Assumed | $0.00 |